## Commonwealth *vs.* James R. McDonald.

Plymouth. February 9, 2012. - May 18, 2012.

Present: Ireland, C.J., Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.

### *Criminal Harassment.*

The evidence at the trial of a criminal complaint was not sufficient to convict the defendant of criminal harassment, where, although the evidence established the complainant's subjective fear and anxiety and her serious alarm after learning, and then observing, that the defendant was regularly driving past her house, at times looking in the direction of her home, and on at least one occasion pointing a camera at her house, and although the defendant's conduct could fairly be described as intentional, in the sense that he drove his route according to a set plan, there was no evidence that the defendant's attention or interest was particularly focused on the complainant and that he intended that she be aware of his attention, or that he otherwise harbored any wrongful or unlawful motive. [240-245]

Complaint received and sworn to in the Wareham Division of the District Court Department on May 18, 2009.

The case was heard by *Kathryn E. Hand*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Maurice A. Reidy, III*, for the defendant.

*Audrey Anderson Kachour*, Assistant District Attorney, for the Commonwealth.

Duffly, J. A complaint for criminal harassment issued against the defendant in the District Court, alleging that on May 15, 2009, he wilfully and maliciously engaged in a knowing pattern of conduct or series of acts in violation of G. L. c. 265, § 43A (*a*). Following a jury-waived trial, a District Court judge found the defendant guilty. In an unpublished memorandum and order issued pursuant to its rule 1:28, the Appeals Court affirmed the conviction. *Commonwealth* v. *McDonald*, 78 Mass. App. Ct. 1122 (2011). We granted the defendant's application for further appellate review. The defendant contends that the

Commonwealth's evidence was insufficient to establish each element of the crime of criminal harassment. We agree.

*Background and prior proceedings.* We recite the evidence viewed in the light most favorable to the Commonwealth. The complainant had become concerned after being informed by others that a man in a white truck was driving down the street where she and her family lived. On May 6, 2009, at about 4 P.M., a neighbor, who lived in a house across the street from the complainant, saw a man, later identified as the defendant, sitting in a parked white truck in front of her own house. He was looking in the direction of the complainant's home and holding a camera. As the neighbor walked out of her house and down her driveway, she saw the defendant raise the camera up; her dog barked and the defendant looked in the neighbor's direction and then drove away. The neighbor had, prior to that day, twice observed a white truck on that street. The next day, at 4 P.M., the neighbor was at an intersection down the street from her house when she observed the defendant driving toward her from the direction of her house and was able to write down the registration plate number of his truck. That evening, she informed the complainant and her husband of her observations. The following day, the complainant and her husband went separately to the police station to report the defendant's actions, providing the registration plate number.

On May 8, after speaking with the complainant's husband, Officer Todd Bazarewsky of the Middleborough police department used the registration plate information to locate the defendant. He went to the defendant's workplace and informed him that unnamed "residents near or around" the complainant's address had observed him in the area several times at about the time the school bus was dropping off children. Bazarewsky explained that because the residents were afraid, it would be "a very good idea" for the defendant to avoid the area and not contact the residents. Bazarewsky also told the defendant he could drive on that street if he wanted to and that he, Bazarewsky, could do nothing to stop him. The defendant told Bazarewsky that he had been taking photographs in the area, was apologetic, and said the residents would not see him again.

On May 11, just before 4 P.M., the complainant was at the end of her driveway waiting for the school bus when she noticed a

white truck passing by. She had not previously seen the vehicle but recognized the registration plate number as that provided to her by her neighbor. After the children were dropped off, and while the complainant was still at the end of her driveway, she observed the white truck passing by again, in the same direction as before, but a little slower than "normal"; the driver was looking to his left toward her house. At trial, the complainant identified the defendant as the driver of the vehicle. The next day, May 12, the scenario was repeated: the defendant drove past in his white truck at approximately ten minutes before 4 P.M. as the complainant sat on a wall at the end of her driveway, and about ten minutes later, he drove by again. The defendant was looking in the direction of her house as he drove; he was not going fast and did not appear to have anything in his hands. These events caused the complainant to become very upset, and she telephoned her husband.

On May 13, again a few minutes before 4 P.M., the complainant was driving home from work when she saw the school bus stopped at the bus stop immediately before her stop, about one-quarter mile from her house. The defendant's truck was close to the bus that the children were disembarking. The defendant was walking from the tailgate of his truck toward the driver's side. The complainant felt afraid because she was unsure of the defendant's intentions in stopping there; she drove past the parked truck to her home.

On May 15, a family friend, whose children were friends of the complainant's three children, and who was aware of her concerns, followed the school bus to the complainant's street and pulled into the complainant's driveway, where she was standing. The children had just gotten off the bus. The defendant drove by and the friend saw the defendant "stare at" the complainant. The friend attempted to follow the defendant but lost him and returned to the complainant's residence. Within ten minutes, the defendant drove by again, in the same direction as before; the friend saw him "staring at the house again." The complainant yelled "Hey, what do you think you're doing?" and the defendant stopped his truck. The friend approached and asked the defendant what he was doing; the defendant said he was "just taking pictures of dogs." The complainant also approached the

truck. The defendant, addressing the complainant, stated that he was sorry to bother her, repeated that he was just taking photographs of her dogs, and said that he was going to write her a letter including the photographs. The complainant's friend told the defendant that if he saw the defendant on the street again, the defendant would "have a problem." The defendant said, "Okay," and drove off. The complainant, who was "hysterical" and crying, contacted the police.

Officer Ronald Costa of the Middleborough police department met with the complainant at her house; after speaking with the complainant, Costa issued a no trespass order, signed by the complainant. He delivered the order to the defendant on the same day and told the defendant that he was to stay away from the complainant's residence. Costa then applied for a warrant for the defendant's arrest.

A school bus driver who drove on a regular route along the complainant's street corroborated the evidence of the defendant's pattern of driving down the street and then proceeding in a loop that took him back onto the street, at or around 4 P.M. When she dropped off the complainant's children at 4 P.M., one of their parents, usually the complainant, was waiting at the bus stop. On an almost daily basis since the beginning of the school year, the school bus driver had seen the defendant driving a white truck in the direction opposite that which the bus was traveling, apparently turning onto another street, making a loop, and passing her again. She thought "nothing of it" and told no one of her observations until the end of May, 2009, when, responding to a question from the complainant, the school bus driver said that "for quite a while" she had noticed a white truck passing her twice a day as she drove down the complainant's street.[1]

The defendant's motion for a required finding of not guilty

---

[1] The defendant, testifying on his own behalf, described his weekday routine in a manner consistent with the Commonwealth's witnesses. He stated that he was employed as a machinist. He began work at 7 A.M. and his work day ended at 3:30 P.M. His wife finished work at 4:30 P.M., so the defendant spent the hour before his wife got out of work listening to the radio, sometimes indulging in his hobby of photography, and driving a loop that covered four streets, including the complainant's. It took twenty minutes to drive the entire loop; he drove two loops and then went home.

The defendant had been following the same routine for three years, and had been given no indication that anyone was disturbed by it until May 12, 2009,

was denied.[2] He was found guilty of criminal harassment and sentenced to one year of probation, with specific conditions that he stay away from the complainant, her family, and her street, and that he take no photographs of dogs.

*Discussion.* To obtain a conviction under the criminal harassment statute, G. L. c. 265, § 43A (*a*), the Commonwealth must "prove that (1) the defendant engaged in a knowing pattern of conduct or speech, or series of acts, on at least three separate occasions; (2) the defendant intended to target the victim with the harassing conduct or speech, or series of acts, on each occasion; (3) the conduct or speech, or series of acts, were of such a nature that they seriously alarmed the victim; (4) the conduct or speech, or series of acts, were of such a nature that they would cause a reasonable person to suffer substantial emotional distress; and (5) the defendant committed the conduct or speech, or series of acts, 'willfully and maliciously.' " *Commonwealth* v. *Kulesa,* 455 Mass. 447, 452 (2009), quoting G. L. c. 265, § 43A (*a*).[3]

when Officer Bazarewsky came to his place of employment, spoke with him, and asked if he had taken photographs in the neighborhood. The defendant said he had taken two photographs of two very large dogs. According to the defendant, Bazarewsky said he understood that neighbors often contact police when they see someone taking photographs, and made a point of saying that there was no reason the defendant could not drive in that direction. (Two photographs of the complainant's dogs in her yard were admitted in evidence.) Following this conversation, the defendant continued to drive the loop but stopped taking photographs. He did not realize how upset the complainant was until she approached him on May 15.

[2]The complaint states that the defendant:

> "did commit the crime of criminal harassment, in that over a period of time between On 5/15/2009 and 5/15/2009 [*sic*] he or she did willfully and maliciously engage in a knowing pattern of conduct or series of acts directed at a specific person . . . which did seriously alarm such person and would cause a reasonable person to suffer substantial emotional distress, in violation of G. L. c. 265, § 43A (*a*)."

The complaint does not state that the defendant was charged with three or more acts of wilful and malicious conduct that occurred over more than one day, nor provide the time frame within which the prohibited conduct was alleged to have occurred. See Mass. R. Crim. P. 4 (a), 378 Mass. 849 (1979). The defendant makes no claim based on the adequacy of the complaint.

[3]As in effect during the relevant period, G. L. c. 265, § 43A (*a*), inserted by St. 2002, c. 164, provided:

> "Whoever willfully and maliciously engages in a knowing pattern

As we noted in *Commonwealth* v. *Welch*, 444 Mass. 80, 87-88 (2005), overruled on another ground by *O'Brien* v. *Borowski*, 461 Mass. 415 (2012), "The criminal harassment law was passed in response to a perceived loophole in the stalking statute. The stalking statute expressly included within its reach 'threatening' conduct or acts, but left without remedy those victims plagued by harassment that, although potentially dangerous, did not include an overt 'threat' and thus was not actionable under existing law."

The defendant claims that the evidence was sufficient to establish only one element of the offense of criminal harassment: that the complainant was seriously alarmed by the defendant's acts. When a defendant challenges the sufficiency of the evidence to support a conviction, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). In this undertaking, we bear in mind that "it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense." *Commonwealth* v. *Latimore*, *supra* at 677. "Nor may a conviction rest upon the piling of inference upon inference or conjecture and speculation." *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988), citing *Commonwealth* v. *Ferguson*, 384 Mass. 13, 18 (1981).

Because the defendant moved for a required finding of not guilty at the close of the Commonwealth's case, "[w]e consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time." *Commonwealth* v. *Semedo*, 456 Mass. 1, 8 (2010), quoting *Commonwealth* v. *Sheline*, 391 Mass.

---

of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress, shall be guilty of the crime of criminal harassment . . . ."

The complaint charging the defendant with criminal harassment pursuant to G. L. c. 265, § 43A (*a*), issued on May 18, 2009. Section 43A (*a*) was rewritten by St. 2010, c. 92, § 10, effective May 10, 2010; the revisions, concerning electronic communication, are not relevant here.

279, 283 (1984). As the defendant concedes, the evidence establishes the complainant's subjective feelings of fear and anxiety, and that she felt "seriously alarmed" after learning, and then observing, that the defendant was regularly driving past her house, at times looking in the direction of her home and, on at least one occasion, pointing a camera at her house. Therefore, we address the evidence as to the remaining elements.

The criminal harassment statute proscribes "willfully and maliciously engag[ing] in a knowing pattern of conduct or series of acts over a period of time directed at a specific person." G. L. c. 265, § 43A (*a*). Wilful conduct is that which is "intentional rather than accidental"; it requires no evil intent, ill will, or malevolence. See *Commonwealth* v. *Luna*, 418 Mass. 749, 753 (1994), and cases cited. A "malicious act," as defined in Black's Law Dictionary 1043 (9th ed. 2009), is an "intentional, wrongful act done willfully or intentionally against another without legal justification or excuse." See *Commonwealth* v. *Paton*, 63 Mass. App. Ct. 215, 219 (2005), quoting *Commonwealth* v. *York*, 9 Met. 93, 104 (1845) (malicious acts are "done with an evil disposition, a wrong and unlawful motive or purpose; the wilful doing of an injurious act without lawful excuse"). "Conduct is wilful when the actor intends both the conduct and its harmful consequences [and] may be wilful and malicious although its harmful consequences are neither substantial nor highly likely" (citations omitted). *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 352 (1990). See *Commonwealth* v. *O'Neil*, 67 Mass. App. Ct. 284, 293 (2006) (defendant's conduct satisfied requirement of malice under G. L. c. 265, § 43A [*a*], because it "was intentional and without justification or mitigation, and any reasonably prudent person would have foreseen the actual harm that resulted"). Furthermore, G. L. c. 265, § 43A (*a*), "by its plain terms, requires the Commonwealth to establish, at the very least, that the defendant intended to target the victim with the harassing conduct on at least three occasions." *Commonwealth* v. *Welch*, 444 Mass. 80, 90 (2005).

The evidence and reasonable inferences drawn therefrom establish that, beginning sometime in September, 2008, on most weekdays at about 4 P.M., the defendant drove his truck along a

route that, twice in a twenty-minute interval, took him past the complainant's home, and that he continued to do so after the police informed him that this conduct caused residents on the street to be fearful and suggested that he not contact residents or go near the area.

The Commonwealth argues that the defendant's continuing to drive down the street, after having been cautioned by police to stay away, constituted the following acts of harassment directed at the complainant: (1) on May 11, when the complainant was at the end of her driveway waiting for the school bus to drop off her children, she observed the defendant driving past, looking at her house, repeating the loop, and driving by ten minutes later; (2) on May 12, the complainant was waiting for her children when she saw the defendant drive by, somewhat slowly, looking at her house, and then she saw him again ten minutes later; (3) on May 13, the complainant saw the defendant's truck parked in front of a location where the school bus had stopped to drop off children one-quarter mile from her home; and (4) on May 15, as she waited for the school bus at the end of her driveway, the defendant drove by twice and was seen "staring" at her house.

Although the defendant's conduct may fairly be described as intentional — in the sense that he drove the route according to a set plan — there is no evidence, nor can any reasoned inference be drawn from the evidence, that the defendant's attention or interest was particularly focused on the complainant and that he intended that she be aware of his attention, or that he otherwise harbored any wrongful or unlawful motive. There was no evidence to support a reasonable inference that the defendant was doing more than looking at a house and taking photographs of dogs in the front yard from a location on a public street. Missing was any evidence of a connection to the complainant, or of prior conduct or communication that, together with seemingly innocuous acts, might have lent them a more sinister air. The act of regularly driving on a public street, looking at people in their driveways or on their porches, or at their dogs and gardens, cannot alone support conviction of a wilful and malicious act directed at a specific person. Even direct advances such as striking up a conversation, asking that a person go out for a drink, or suggesting that a woman ask her boss for time off, which justifiably might engender

feelings of discomfort, do not, in the absence of evidence of malicious intent, amount to criminal behavior. See *Commonwealth* v. *Clemens*, 61 Mass. App. Ct. 915, 915-916 (2004) (reversing judgment of conviction where four out of five initial encounters were innocuous and only fifth in series of encounters qualified as harassment).

The Commonwealth argues that "staring" has sinister connotations and urges us to infer, from testimony that the defendant "stared" either at the complainant or her house, that the defendant harbored either an inappropriate interest in her or feelings of ill will directed at her. We are reluctant to imbue "staring" with any sinister connotation in the absence of an objective basis — such as a description of something particular in the defendant's facial expression, verbal expression, or body language — from which such a subjective assessment could have been made. Nor was there other evidence — such as a change in the defendant's demeanor over time that might have provided a frame of reference for the defendant's subsequent behavior — from which the inference of a malevolent attitude could be drawn. Contrast *Commonwealth* v. *Robinson*, 444 Mass. 102, 103-105 (2005) (defendant twice parked near victim, glaring or staring menacingly; once parked so as to block victim's exit from community garden requiring victim to drive on grassy area in order to leave; approached victim in coffee shop with clenched fists and made veiled threats; and walked up to victim and family who were inside their vehicle, focusing camera on victim's son at close range); *Commonwealth* v. *Paton*, 63 Mass. App. Ct. 215, 216-219 (2005) (defendant appeared over twenty times at bar where victim was employed, each time asking for her by name, remaining only if she was working; his demeanor changed from pleasant to uncommunicative, pacing, and staring; he looked inside her car, appeared in numerous places she frequented, but denied knowing her when confronted by police).

When Bazarewsky spoke with the defendant on May 8, he did not mention the complainant by name and told the defendant only that "the residents near or around" her address were in fear of him. The officer had no basis upon which to order the defendant to stay away from the street, a public thoroughfare, and indeed he did not order the defendant to do so. The officer's

suggestion that the defendant refrain from conduct in which he had the right to engage cannot provide the foundation on which to erect a charge of criminal harassment.

We do not suggest that apparently innocent conduct may never, when considered with other evidence, amount to harassment within the meaning of the statute. Cf. *Rauseo* v. *Rauseo*, 50 Mass. App. Ct. 911, 912 (2001) (upholding extension of abuse prevention order where defendant twice sent plaintiff flowers; parties were involved in acrimonious divorce and defendant persisted in efforts to have contact with plaintiff, although order prohibited contact; in that context, "the sending of flowers was neither friendly nor benign, but could reasonably have been perceived as a hostile and threatening act"). However, that type of additional evidence was not present here. Without such evidence, an element of the offense of criminal harassment has not been proved, and the conviction cannot stand.

*Judgment reversed.*

*Finding set aside.*

*Judgment for the defendant.*