NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12518


COMMONWEALTH  vs.  FRANCIS T. BRENNAN.



Plymouth.     October 4, 2018. - December 21, 2018.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, & Cypher, JJ.


Criminal Harassment.  Global Positioning System Device.



Complaint received and sworn to in the Hingham Division of
the District Court Department on August 26, 2016.

A motion to dismiss was heard by Julieann Hernon, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


David Cutshall, Assistant District Attorney (Gail M.
McKenna, Assistant District Attorney, also present) for the
Commonwealth.
Sabrina E. Bonanno (Richard J. Sweeney also present) for
the defendant.
Kevin M. Davis, for Licensed Private Detective Association
of Massachusetts, amicus curiae, submitted a brief.


CYPHER, J.  A complaint issued against the defendant,

Francis T. Brennan, charging him with two counts of criminal

harassment in violation of G. L. c. 265, § 43A.  The charges

stem from allegations that he was using two global positioning system (GPS) devices to track the movements of a married couple he had never met before, to whom we shall refer as J.D. and J.H.[1] After holding two nonevidentiary hearings, a District Court judge allowed the defendant's motion to dismiss. The judge ruled that the complaint did "not allege three qualifying acts to support a charge of criminal harassment as to either named victim." The Commonwealth appealed, and we transferred the case to this court on our own motion. On appeal, the Commonwealth contends that the complaint supplied probable cause to charge the defendant with two counts of criminal harassment. We conclude that the series of acts outlined in the complaint that are attributed to the defendant satisfy the elements of criminal harassment against J.D. and J.H. The order dismissing the complaint is reversed.[2]

1. Background. "Our review of the judge's order of dismissal is confined to the four corners of the application for complaint, which in this case" consists of the police reports

---

[1] Although the complaint is silent regarding any relationship between the defendant and the couple, the defendant contends in his brief, at the motion hearing, and at oral argument before this court that he had never met J.D. or J.H. before. He claims that their first interaction was at a hearing for a harassment prevention order.

[2] We acknowledge the amicus brief submitted by the Licensed Private Detective Association of Massachusetts in support of the Commonwealth.

detailing the facts underlying the defendant's arrest.
Commonwealth v. Ilya I., 470 Mass. 625, 626 (2015). We
summarize the police reports that were attached to the
complaint. In May, 2016, J.D. discovered a GPS device attached
to the undercarriage of his wife's vehicle and reported the
discovery to the Hingham police department. J.D. was concerned
because he could not think of anyone who would be monitoring his
or his wife's location. The police took the GPS device and
advised J.D. to check his own vehicle for a similar device.
Upon returning home, J.D. discovered a second GPS device on his
vehicle where the spare tire would be located.

The following day, police interviewed J.D. and J.H. at
length, together and separately. Police questioned the couple
about their finances, careers, and potential infidelity. No
information, however, was gathered as to who attached the GPS
devices to their vehicles.

The police contacted the manufacturer of the GPS device,
Brickhouse Security (Brickhouse), but were unable to obtain the
corresponding customer information. Because J.D. was a member
of the United States Coast Guard, he reported the event to
Special Agent Jeremy Baldwin of the United States Coast Guard's
investigative service. Baldwin obtained a subpoena to gather
information from Brickhouse. Brickhouse informed him that the

defendant was the owner of the GPS devices and that the GPS devices were shipped to the defendant in December 2015.

Baldwin and the police then interviewed the defendant. At first, he denied any knowledge of who placed the GPS devices on J.D. and J.H.'s vehicles. He stated, "[L]et's just say things got a little out of hand due to some prior circumstances, it[']s moral, it's not anything other than that, his wife might want to start checking his phone." The defendant made statements suggesting that J.D. was having an affair and that the defendant was concerned about it.[3] The defendant stated: "[I am] guarding the hen house"; "my only stake in all this is to make sure somebody was not in the place that I'm in all the time"; that he believed J.D. was "stepping out" of his marriage; and that he wanted to make sure his "backyard was clear." The defendant refused to provide the name of the person he alleged was having sexual relations with J.D.

Eventually, the defendant admitted that he had an account with Brickhouse and that he was monitoring the movements of the couple's vehicles using the GPS devices, which he accessed with

---

[3] The defendant's interest in J.D.'s fidelity is not apparent from the record in this appeal.

his Apple iPhone[4] and laptop computer.[5]  Police searched the defendant's iPhone pursuant to a warrant and created a forensic extraction report.  The defendant's Internet history included visits to Brickhouse's online log-in page, J.D.'s Twitter social media page, and fifty-three Internet mapping program searches of various latitude and longitude coordinates gathered from the GPS devices.  Baldwin subpoenaed the Brickhouse account information and received a full history report for each device.  The history reports provided detailed location information about each device.[6]  Baldwin also discovered that the defendant purchased a third GPS device in April, approximately one month before J.D. discovered the two GPS devices.  Using the forensic data from the defendant's iPhone, the police confirmed seventeen separate instances in which the defendant researched the locations of the vehicles over the course of ten days in May 2016.

---

[4] An iPhone, which is manufactured by Apple Inc., is a type of "smart" cellular telephone that, in addition to making telephone calls, can transmit text messages, perform the functions of both a camera and a video recorder, enable the operation of various applications, and connect to the Internet. See Commonwealth v. Dorelas, 473 Mass. 496, 497 n.1 (2016).

[5] A search of the defendant's laptop computer provided a negative result because the computer did not have a hard drive.

[6] The reports had information about the speed and distance the devices traveled, and the devices' coordinates, matched with dates and times.

After interviewing the defendant, the police and Coast Guard interviewed J.D. again and informed him of the defendant's accusations that he was having an affair. J.D. denied the accusations and consented to a search of his cellular telephone by Coast Guard investigators.

Throughout the police investigation, J.D. and J.H. expressed concern for their safety because the defendant's intentions were unknown. J.H. had difficulty sleeping, and J.D. had to change his work schedule to be home with her during the nighttime hours. The couple feared retaliation from the defendant for contacting the police. They also installed security cameras at their residence and sought an emergency harassment prevention order against the defendant.

2. Standard of review. "In reviewing a motion to dismiss a complaint, the judge must decide whether the complaint application contains 'sufficient evidence to establish the identity of the accused . . . and probable cause to arrest him.'" Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013), quoting Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982). This standard is "considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding." Commonwealth v. O'Dell, 392 Mass. 445, 451 (1984), citing Myers v. Commonwealth, 363 Mass. 843, 848-849 (1973). "A judge considering a motion to dismiss should not confuse the question

of probable cause to arrest with questions more properly resolved by the fact finder at trial." Commonwealth v. Bell, 83 Mass. App. Ct. 61, 64 (2013). The complaint application must establish probable cause by providing reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense. Id. at 63, quoting O'Dell, supra at 450. Whether the complaint application establishes probable cause is a question of law; thus, "we review the motion judge's . . . determination de novo." Humberto H., supra at 566, quoting Commonwealth v. Long, 454 Mass. 542, 555 (2009), S.C., 476 Mass. 526 (2017). We are in as good a position as a motion judge to assess the evidence submitted in support of the application for a criminal complaint, and we consider the evidence in the light most favorable to the Commonwealth without deference to the motion judge's factual findings or legal conclusions. Commonwealth v. Silva, 455 Mass. 503, 526 (2009).

3. Discussion. To support the complaint for criminal harassment, the Commonwealth must show that there is probable cause that "(1) the defendant engaged in a knowing pattern of conduct or speech, or series of acts, on at least three separate occasions; (2) the defendant intended to target the victim with the harassing conduct . . . on each occasion; (3) the conduct . . . [was] of such a nature that [it] seriously alarmed the

victim; (4) the conduct . . . [was] of such a nature that [it] would cause a reasonable person to suffer substantial emotional distress; and (5) the defendant committed the conduct . . . 'willfully and maliciously.'" Commonwealth v. McDonald, 462 Mass. 236, 240 (2012), quoting Commonwealth v. Kulesa, 455 Mass. 447, 452 (2009). See G. L. c. 265, § 43A. The Commonwealth argues that the complaint overcomes the low threshold required to show that there was probable cause that the defendant committed two counts of criminal harassment. The defendant maintains that there is no probable cause to support four of the five elements of criminal harassment: (1) the complaint does not allege three qualifying acts; (2) he did not intend to target J.D. or J.H. with harassing conduct; (3) the conduct would not cause a reasonable person to suffer substantial emotional distress; and (4) the conduct was not committed willfully and maliciously.

a. Three acts targeted at J.D. and J.H. According to the defendant, the complaint does not establish three qualifying acts of criminal harassment against either J.D. or J.H. We conclude that there was probable cause that the defendant committed at least three separate acts targeted at J.D. and J.H. when he concealed the GPS device on J.D.'s vehicle, concealed the GPS device on J.H.'s vehicle, and then tracked the movements of the GPS devices from his iPhone.

The defendant contends that placing GPS tracking devices on the couple's vehicles does not qualify as an "act" under § 43A because there is no law that criminalizes such conduct by a private person. The defendant's argument is unavailing. A defendant's otherwise legal conduct may qualify as an act of harassment when considered with other evidence. See McDonald, 462 Mass. at 245. In addition to concealing the GPS devices, the defendant commented to the police that J.D. was "stepping out" on his wife and that the defendant was "guarding the hen house." Making matters worse, the defendant admits that he had never had any interaction with either J.D. or J.H. before. Viewing the evidence in this context and in the light most favorable to the Commonwealth, we conclude that the act of concealing a GPS device on an individual's vehicle qualifies as an "act" within § 43A.

The defendant maintains, however, that even if placing the GPS devices does qualify as an "act" within § 43A, it is only one act against J.D., placing the GPS on his car, and one act against J.H., placing the GPS on her car. The defendant correctly points out that G. L. c. 265, § 43A (a), "requires that the Commonwealth prove three or more predicate acts of harassment that were 'directed at a specific person.'" Commonwealth v. Johnson, 470 Mass. 300, 312 (2014), quoting McDonald, 462 Mass. at 240. He claims that the complaint does

not provide evidence that his attention was directed specifically at J.D. or J.H.  We disagree.

The information in the complaint is enough to warrant a reasonable person to conclude that the defendant's harassing conduct was targeted at J.D. and J.H.  See generally Johnson, 470 Mass. at 312-313 (acts of harassment can be directed simultaneously at more than one person).  Contrast Commonwealth v. Welch, 444 Mass. 80, 92 (2005), abrogated on another ground, O'Brien v. Borowski, 461 Mass. 415 (2012) (Commonwealth did not establish that defendant's use of homophobic slurs once when talking in normal tones outside apartment building where she and alleged victims lived and again when yelling inside her own apartment was intended to be heard by victims or that she should have known that slurs would be heard by them); Demayo v. Quinn, 87 Mass. App. Ct. 115, 116, 118 (2015) (evidence was insufficient to show that defendant's conduct -- entering plaintiff's horse barn, removing or rearranging items, and throwing items into horse's stall -- was aimed at plaintiff). In response to the police's questioning, it was evident that the defendant harbored an animus toward J.D.  Cf. Demayo, supra at 118.  The defendant made a number of statements aimed at the couple regarding J.D.'s fidelity to J.H.  The defendant stated that he believed J.D. was "stepping out" of J.D.'s marriage and that he wanted to make sure his "backyard was clear."  He

suggested that J.H. "might want to start checking [J.D.'s] phone." The defendant stated that he was "guarding the hen house" and that his "only stake in all this [was] to make sure somebody was not in the place that [he was] in all the time." When he eventually admitted that he had an account with Brickhouse, he confessed that he was monitoring the movements of J.D. and J.H. Moreover, the forensic extraction data from the defendant's phone showed that he was visiting J.D.'s Twitter social media page. The defendant's peculiar behavior is exacerbated by the fact that he had never met the couple.

Although the defendant's statements during the investigation suggest he was monitoring J.D. to protect J.H. from J.D.'s alleged infidelity, the defendant placed GPS devices on both J.D. and J.H.'s vehicles. The complaint provides no indication that the defendant knew which vehicle J.D. or J.H. drove. It is a reasonable inference that the defendant targeted both individuals when he attached a device to both vehicles, rather than just one, to ensure that all of J.D.'s potential movements were tracked. In determining whether acts of harassment are directed at a person, we look not only to statements and conduct of the defendant but to the nature of the act and the natural consequence of the act. See Johnson, 470 Mass. at 312. Here, a reasonable person in the defendant's position would have known that placing the GPS devices on both

vehicles would alarm both individuals if and when they learned of it. Because the complaint provides reasonably trustworthy information sufficient to warrant a reasonable person in believing that the defendant targeted both J.D. and J.H., we conclude that the concealment of the two devices on the couple's vehicles constitutes two acts of harassment against J.D. and two acts of harassment against J.H.

The Commonwealth argues that the defendant committed at least one act against J.D. and J.H. when he tracked the GPS devices seventeen times over the course of ten days. The defendant argues that his act of gathering the GPS information and mapping the devices' coordinates online does not qualify as an "act" because neither J.D. nor J.H. was aware that they were being tracked.

Neither J.D. nor J.H. had to be aware that they were being tracked for the defendant's conduct to qualify as at least one act of harassment against each of them. The complaint must show that there is probable cause that the "cumulative effect of the defendant's pattern of conduct 'seriously alarm[ed]' [them] -- not that each individual incident was alarming." Commonwealth v. Walters, 472 Mass. 680, 699 (2015), S.C., 479 Mass. 277 (2018), quoting Johnson, 470 Mass. at 314. See Johnson, supra (criminal harassment "statute's wording ties the requirement to the over-all pattern of conduct"). J.D. and J.H. may not have

been aware that they were being tracked, but, as the defendant concedes, once they discovered the devices they were seriously alarmed.

Adding an awareness element to § 43A would frustrate the purpose of the law. "The criminal harassment law was passed in response to a perceived loophole in the stalking statute. The stalking statute expressly included within its reach 'threatening' conduct or acts, but left without remedy those victims plagued by harassment that, although potentially dangerous, did not include an overt 'threat' and thus was not actionable under existing law" (citation omitted). McDonald, 462 Mass. at 241. With advancements in technology it is becoming easier for people to do exactly what the defendant did here. Once J.D. discovered the GPS devices, it is logical that the defendant's tactics used to monitor the couple's movements would qualify as acts to satisfy the criminal harassment statute. Therefore, the couple did not have to know in real time that they were being tracked for the defendant's conduct of mapping their locations to constitute at least one act.

We recognize that the defendant's conduct of entering the GPS devices' coordinates into an Internet mapping program seventeen times over a ten-day span may be construed as more than one act. The police report shows that the defendant mapped the GPS coordinates at different times -- sometimes closer in

time than others -- on different days.  We count the tracking of the devices as at least one act for purposes of reaching the requisite three acts in § 43A.  We determine, however, that it is unnecessary in this case to conduct a temporal analysis of each time the defendant checked the GPS devices to deconstruct each individual act because we already have identified the three acts to satisfy the statute.[7]

b.  <u>Substantial emotional distress</u>.  After learning that they were being tracked, the couple suffered substantial emotional distress.  J.D. expressed concern for his safety, changed his work schedule, installed security cameras at his house, and feared retaliation from the defendant for informing the police.  J.H. also was concerned for her safety, was afraid to be home alone at night, and had difficulty sleeping.  The defendant concedes that there was sufficient evidence that the couple was seriously alarmed by his conduct.  He argues,

---

[7] We do not hold that the entire course of conduct of repeatedly tracking the device is one continuous act.  Although our cases have not established a specific amount of time that must elapse between harassing acts for them to be sufficiently discrete, acts committed during a single afternoon have been deemed sufficiently distinct to warrant a conviction of criminal harassment.  See <u>Commonwealth</u> v. <u>Julien</u>, 59 Mass. App. Ct. 679, 685 (2003) (three incidents, two occurring on same day, sufficient to satisfy stalking statute).  Cf. <u>Commonwealth</u> v. <u>Kulesa</u>, 455 Mass. 447, 451 (2009) (defendant's two telephone calls to victim's sister on one afternoon were sufficient for two of three required acts).

however, that a reasonable person in their position would not suffer substantial emotional distress.

Contrary to the defendant's argument, the evidence in the complaint was sufficient to establish probable cause that a reasonable person in J.D. and J.H.'s positions would have suffered substantial emotional distress. J.D. found two GPS tracking devices under his and his wife's cars that were placed by the defendant -- someone that the couple had never met. The couple also learned that the defendant had tracked the GPS device's location seventeen times over the course of ten days. Moreover, the defendant made a number of distressing statements regarding J.D.'s fidelity toward J.H. There was probable cause that J.D. and J.H. were seriously alarmed, and "any reasonable person would be greatly alarmed and experience severe emotional distress if subjected to such similar circumstances." Commonwealth v. O'Neil, 67 Mass. App. Ct. 284, 294 (2006).

c. Willful and malicious conduct. The defendant argues that he did not commit the requisite three acts willfully or maliciously as the statute requires. See G. L. c. 265, § 43A. "Wilful conduct is that which is 'intentional rather than accidental'; it requires no evil intent, ill will, or malevolence." McDonald, 462 Mass. at 242, quoting Commonwealth v. Luna, 418 Mass. 749, 753 (1994). Malicious conduct is an "intentional, wrongful act done willfully or intentionally

against another without legal justification or excuse." McDonald, supra, quoting Commonwealth v. Paton, 63 Mass. App. Ct. 215, 219 (2005).

As discussed above, the defendant committed at least three acts against J.D. and J.H. when he placed the GPS devices on each of their vehicles and then tracked the GPS devices locations by using his iPhone. The acts were willful because he intentionally placed the GPS devices and intentionally tracked the locations. Likewise, the defendant's actions were malicious because he had no justification for his conduct. See O'Neil, 67 Mass. App. Ct. at 293. It was also reasonably foreseeable that J.D. and J.H. would be alarmed when they learned that they were being tracked. See McDonald, 462 Mass. at 242, quoting Commonwealth v. Schuchardt, 408 Mass. 347, 352 (1990) ("Conduct is wilful when the actor intends both the conduct and its harmful consequences [and] may be wilful and malicious although its harmful consequences are neither substantial nor highly likely").

4. Conclusion. Probable cause must be determined from the totality of the circumstances. Commonwealth v. Hernandez, 448 Mass. 711, 715 (2007). It is a concept guided by "factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175 (1949). The Commonwealth has

made the requisite showing.  There was probable cause that the defendant committed three separate acts of intentional harassment when he placed the GPS device on J.D.'s car, placed the GPS device on J.H.'s car, and then tracked the movements of the devices.  The acts were done willfully and maliciously, seriously alarmed J.D. and J.H., and would cause a reasonable person to suffer substantial emotional distress.

As technology has advanced, the tools that people can use to harass victims have increased.  See Fraser, Olsen, Lee, Southworth, and Tucker, The New Age of Stalking:  Technological Implications for Stalking, 61 Juv. & Fam. Ct. J. 39, 40-41 (Fall 2010).  The law has not fully caught up to the new technology, and given the speed with which technology evolves, it may sometimes leave victims without recourse.  See id. at 48-49.  The Legislature may wish to explore whether the conduct of a private person electronically monitoring the movements of another private person should be criminalized, regardless of whether it would constitute criminal harassment.[8]  In these

_____

[8] Other States have done so.  See, e.g., Cal. Penal Code § 637.7 (prohibits person or entity from using electronic tracking device to determine location or movement of person); Fla. Stat. § 934.425 (person may not knowingly install tracking device on another person's property without consent); 720 Ill. Comp. Stat. 5/21-2.5 (no person shall use tracking device to determine location or movement of another person); La. Rev. Stat. Ann. § 14:323 (no person shall use tracking device to determine location or movement of another person without consent of that person); Mich. Comp. Laws § 750.539l (prohibits placing

circumstances, the defendant's behavior satisfied the three acts necessary for the criminal harassment statute, but there may be occasions where the facts might not be sufficient for the statute to encompass a defendant's conduct.[9]

Order allowing motion to
dismiss reversed.

---

tracking device on motor vehicle without consent of owner of vehicle); Minn. Stat. § 626A.35 (no person may install or use tracking device without first obtaining court order or consent of owner of object to which device is attached); N.C. Gen. Stat. § 14-196.3 (no person shall use tracking device to determine location or movement of another person without that person's consent); R.I. Gen. Laws § 11-69-1 (person may not knowingly install tracking device in or on motor vehicle without consent of all owners and occupants of vehicle for purpose of monitoring or following occupant); Tenn. Code Ann. § 39-13-606 (person may not knowingly install tracking device in or on motor vehicle without consent of all owners for purpose of monitoring or following occupant of vehicle).

[9] For example, we can envision a circumstance in which a defendant uses a GPS device, but the Commonwealth cannot show that there was a specific target of the tracking, or that there were three acts of criminal harassment.