NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-104

COMMONWEALTH

vs.

LAWRENCE ZINSER.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

While serving a period of probation, the defendant was charged with new criminal offenses.  Following an evidentiary hearing, a judge of the Superior Court determined that it was more likely than not that the defendant had violated the conditions of his probation by committing the new offenses and revoked the defendant's probation.  For the reasons that follow, we affirm.[1]

Background.  In August 1998, a jury convicted the defendant of armed assault with intent to kill, assault and battery with a dangerous weapon on a person over sixty, and malicious

_____

[1] Although this appeal appears to be untimely, we choose to decide it on the merits.  See Eyster v. Pechenik, 71 Mass. App. Ct. 773, 781-782 (2008).

destruction of property.[2]  The defendant appealed, and the judgments of conviction were affirmed by a different panel of this court in an unpublished memorandum and order.  See Commonwealth v. Zinser, 51 Mass. App. Ct. 1105 (2001).  In February 2021, after a lengthy term of incarceration (twenty-three years), the defendant was released from prison and began to serve a ten-year term of probation.  Approximately six months later, on August 2, 2021, he was indicted by a grand jury and charged with two counts of criminal harassment, subsequent offense, in violation of G. L. c. 265, § 43A.  On the basis of the new charges, the probation department issued a notice of surrender, alleging that the defendant had violated the condition of his probation requiring him to "obey local, state, and federal laws, and court orders."[3]

---

[2] The victims in the case were the brother and husband of a former student whom the defendant had met at least a decade earlier while he was employed as a substitute teacher at Lowell High School.  There was evidence, as the defendant acknowledges in his brief, that the incident was related to the defendant's stalking of the student.  Commonwealth v. Zinser, 51 Mass. App. Ct. 1105 (2001).

[3] The notice of surrender also alleged that the defendant had violated the special condition of his probation requiring him to have "no contact direct or indirect contact with victims or family of victims."  The judge found that the evidence did not support a finding that the defendant had failed to comply with the no contact order because neither victim of the new charges was a victim of the crimes for which the defendant had been convicted.  Consequently, he did not revoke the defendant's probation on this ground.

Based on the evidence presented at the probation revocation hearing,[4] the judge could have found as follows. The defendant has a lengthy criminal history that included incidents of criminal harassment. The alleged victims of the new criminal harassment charges, Susan and Linda,[5] had been subjected to the defendant's intimidating and harassing conduct before he was incarcerated in 1998. Although the defendant was not convicted of any offense involving either victim, they both reported the defendant's conduct to the police at that time. The ensuing investigation revealed that the defendant made annoying and harassing telephone calls to Susan, sent her letters containing "sexual overtones and threatening gestures," and on two separate occasions the tires of cars belonging to her parents and neighbors were slashed. The defendant also wrote to Linda, and in one letter he referred to Susan as a "she monster" and speculated that "I guess you'll be talking about me to her [Susan] in 1992!" After Linda gave the letter to the police, the tires of cars belonging to her family were slashed.

Within a few months of being released from prison, the defendant attempted to contact Linda and Susan by calling the

_____

[4] Most of the hearing was not recorded. The parties filed a joint motion to reconstruct the record pursuant to Mass. R. A. P. 8 (c), as appearing in 481 Mass. 1611 (2019). The judge allowed the motion in part and made certain modifications.
[5] The alleged victims' names are pseudonyms.

telephone numbers associated with the homes in which they lived decades earlier when the defendant knew them. The defendant called Linda's number three times on her birthday in April 2021. Linda's mother was still residing in the house and did not answer the first two calls because she did not recognize the number. She answered the third call and spoke briefly with the caller, who asked for Linda. The mother replied that Linda was not home. After the caller hung up, the mother dialed the number appearing as the last call on her phone and learned that the number belonged to the defendant. Linda was interviewed about the telephone calls by a police detective who was familiar with the defendant's prior criminal conduct. He described her as "extremely shaken" and she expressed her fear of the defendant. She stated that she "could not believe that [the harassment] was happening again."

The defendant also telephoned Susan's childhood home. Susan testified about the telephone calls before the grand jury. Portions of her testimony were submitted as an exhibit at the probation revocation hearing. She related that the defendant spent ten years terrorizing her and her family in the 1990s. When Susan learned that the defendant had been released from prison, she moved her elderly mother out of her childhood home out of fear that the defendant would target Susan and her family again. Telephone records obtained during the investigation

4

showed six telephone calls from the defendant's phone number were placed to Susan's prior home. The first call was made on April 25, four calls were made on April 27, and one call on April 28. None of these telephone calls was answered. Susan was "[t]errified" on learning the defendant had called her mother's home.

Discussion. "In a probation revocation hearing, the issue to be determined is not guilt beyond a reasonable doubt but, rather, whether the probationer more likely than not violated the conditions of his probation" (citation omitted). Commonwealth v. Sargent, 98 Mass. App. Ct. 27, 29 (2020). "Thus, we uphold a judge's finding of a probation violation if it is supported by a preponderance of the evidence. . . . The decision to revoke probation, based on a violation shown by a preponderance of the evidence, lies within the discretion of the judge." Id. The defendant first argues that the judge abused his discretion because the evidence did not establish by a preponderance of the evidence that he had committed new criminal offenses. We disagree.

> "To support the complaint for criminal harassment, the Commonwealth must show that there is probable cause that (1) the defendant engaged in a knowing pattern of conduct or speech, or series of acts, on at least three separate occasions; (2) the defendant intended to target the victim with the harassing conduct . . . on each occasion; (3) the conduct . . . [was] of such a nature that [it] seriously alarmed the victim; (4) the conduct . . . [was] of such a nature that [it] would cause a reasonable person to suffer

5

substantial emotional distress; and (5) the defendant committed the conduct . . . 'willfully and maliciously'" (quotations and citation omitted).

Commonwealth v. Brennan, 481 Mass. 146, 149-150 (2018).

The defendant contests the sufficiency of the evidence with regard to the fourth element only.  He claims that the conduct at issue -- dialing a telephone number -- was not illegal and would not cause a reasonable person to suffer substantial emotional distress.  This argument ignores our case law which holds that even innocuous conduct may constitute harassment in certain circumstances.  "A defendant's otherwise legal conduct may qualify as an act of harassment when considered with other evidence."  Brennan, 481 Mass. at 150.  Here, the other evidence the judge could consider consisted of the defendant's prior history of harassing conduct and, more importantly, the defendant's previous intimidating conduct toward Linda, Susan, and their families.  Both Linda and Susan expressed their fear that the defendant would recommence a pattern of harassment against them.  There was ample evidence from which the judge could conclude not only that the victims were seriously alarmed by the defendant's conduct but also that "any reasonable person would be greatly alarmed and experience severe emotional distress if subjected to similar circumstances." Commonwealth v. O'Neil, 67 Mass. App. Ct. 284, 294 (2006).  See Commonwealth v. Lehan, 100 Mass. App. Ct. 246, 253 (2021).

Next, the defendant argues that the order of revocation violated his right to due process because he was not provided with notice that attempting to contact either Linda or Susan could result in criminal charges. This argument misses the mark. It matters not that the no contact order set forth as a special condition of the defendant's probation did not include either Linda or Susan because the probation contract clearly stated that the defendant was required to obey all State laws. The condition requiring the defendant to obey all State laws provided reasonable guidance that a person of reasonable intelligence would understand that engaging in criminal activity was prohibited. Put another way, the revocation of the defendant's probation was consistent with due process because he received notice that the commission of a new crime could lead to a revocation of his probation. See Commonwealth v. Ruiz, 453 Mass. 474, 475 (2009) (due process requires that probationers "receive fair warning of conduct that may result in the revocation of probation").

Lastly, the defendant argues that the order of revocation did not comport with due process because the criminal harassment statute is unconstitutionally vague as applied to him. This argument is similarly unavailing. First, we note that the Supreme Judicial Court has held that the statute is not unconstitutional on its face as it is neither overbroad nor

7

vague.  See Commonwealth v. Johnson, 470 Mass. 300, 308-309 (2014).  Second, as discussed above, while it is true that the placement of an (unanswered) telephone call by itself would not ordinarily constitute an act of harassment, under the circumstances presented the defendant had notice that he could be held criminally liable for any act of harassment and that any attempt to contact one of the persons whom he previously had subjected to harassment would fall into that category.  Accordingly, viewed in context, the revocation of the defendant's probation was consistent with due process.

Order revoking probation and
   imposing sentence affirmed.

By the Court (Vuono, Singh &
   Englander, JJ.[6]),

*Joseph F. Stanton*

Clerk

Entered:  November 1, 2023.

---

[6] The panelists are listed in order of seniority.