NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-562                                          Appeals Court

COMMONWEALTH vs. RUSSELL B. SNOW.

No. 22-P-562.

Bristol.      September 19, 2023. – July 8, 2024.

Present: Rubin, Neyman, & Walsh, JJ.


Open and Gross Lewdness and Lascivious Behavior. Probable
     Cause. Practice, Criminal, Dismissal.



     Complaint received and sworn to in the New Bedford Division
of the District Court Department on March 2, 2021.

     A motion to dismiss was heard by Joseph P. Harrington, Jr.,
J.


     Julianne Campbell, Assistant District Attorney, for the
Commonwealth.
     Thomas J. Chirokas for the defendant.


     NEYMAN, J. The Commonwealth appeals from a District Court

judge's order dismissing a count of open and gross lewdness and

lascivious behavior (open and gross lewdness), G. L. c. 272,

§ 16, against the defendant, Russell B. Snow. This case

requires us to analyze whether the defendant's conduct could be

found to be "open" within the meaning of the statute.  We conclude that the information contained in the criminal complaint application failed to establish probable cause that the defendant exposed himself "openly" and thus affirm.

Background.  1.  Facts.  We describe the facts as set forth in the criminal complaint application and the police reports attached thereto.  The victim and her boyfriend knew the defendant through their church and hired him to paint the victim's residence.  The defendant met with the victim at her house two days prior to the incident to discuss the quote for the paint job.  During their conversation, the defendant "pointed to one of [the] cameras inside the house and asked what those were."  The victim replied that she had installed cameras in the house "after her husband had passed away and [while] her mother-in-law [was] staying at the residence."  She further explained to the defendant that she used the cameras to "keep an[] eye on people who are coming in and out of the house for her [mother-in-law] when [the victim] was at work."

On February 9, 2021, the defendant arrived at the victim's residence, at which time the video cameras captured the following incident.[1]  The defendant walked around the house for

_____

[1] The police reports submitted with the criminal complaint application detail the content of the "camera footage" retrieved from the victim's "surveillance camera system."

approximately nine minutes, during which time he "[went] around the rooms checking the ceiling corners," "look[ed] into Camera 3," moved the ladder twice, "place[d] a drop cloth over the ladder," and "c[ame] back into the room without his shoes on." Next, the defendant entered the bathroom. Less than one minute later, he "c[ame] out of the bathroom with no pants on and [was] masturbating." He entered the room "with a cloth in his left hand and his right hand on his penis and briefly look[ed] at the camera." The defendant walked into various rooms throughout the house including the kitchen while masturbating, and looked at or "into" the camera several times. Approximately two minutes after leaving the bathroom, the defendant "ejaculate[d] into the rag he [was] holding . . .[,] walk[ed] back into the bathroom[,]" and then exited the bathroom with his pants on. He then removed the drop cloth from the ladder, moved the ladder back near the couch, cleaned the floor in the kitchen, and left the residence. "After [the defendant] finished masturbating and was grabbing his belongings he did not look at the cameras once."

On February 10, Detective Nathan Avelar of the police department family service and sexual assault unit was assigned to the case and contacted the victim. Detective Avelar met with the victim at her residence on February 11, and the victim explained the incident and showed the detective her surveillance

camera system in the basement of her residence.  The victim stated that on the date of the incident, she witnessed "on the cameras" the defendant masturbating in the kitchen.[2]  She also provided Detective Avelar with the time at which the incident occurred.  Another detective retrieved the video footage and loaded it onto a universal serial bus (USB) drive.  On February 16, Detective Avelar interviewed the defendant at the police station during which the defendant eventually admitted to having masturbated in the victim's residence on February 9, stating, "I thought I was by myself."[3]

---

[2] As acknowledged by the Commonwealth at oral argument, there was no evidence in the criminal complaint application and attached police reports that the victim viewed the video footage contemporaneously with the incident.  To the contrary, as indicated by the Commonwealth, the record reflects that the victim observed the defendant's conduct "on a recorded video."

[3] During his interview with Detective Avelar, the defendant also stated that "he didn't think the cameras were on in the house" and that during his conversation with the victim two days prior to the incident, "she stated it was an old system that she had when her mom lived there. . . .  [H]er mom has been deceased for a couple of years and I didn't think anything was on."  The defendant further stated, "I thought I was by myself like at my own house.  No one was there, no one ha[d] been there . . . [when] I was there.  I looked at it like I was at my own house."  When Detective Avelar asked the defendant why he looked at the cameras while masturbating, he responded, "[T]here were no lights on it, I don't know camera systems.  I always thought there was a red light or green light and no lights were on.  To me it was a verification that no lights are on[,] the cameras aren't on."  As discussed below, in reviewing a motion to dismiss for lack of probable cause, we view the information in the criminal complaint application "in the light most favorable to the Commonwealth," see Commonwealth v. Leonard, 90 Mass. App.

2.  Procedural history.  The defendant was arraigned on March 4, 2021, and charged with one count of open and gross lewdness pursuant to G. L. c. 272, § 16.  The defendant filed a motion to dismiss the complaint.  Following a nonevidentiary hearing in the District Court, the judge determined that the information submitted to the clerk-magistrate failed to demonstrate that the conduct was "open" pursuant to the statute and allowed the motion.  The Commonwealth now appeals.

Discussion.  1.  Legal standards.  a.  Probable cause. Probable cause "exists where the facts and circumstances . . . [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been . . . committed" (quotation and citation omitted).  Commonwealth v. Coggeshall, 473 Mass. 665, 667 (2016).  "Probable cause requires more than mere suspicion, but it is considerably less demanding than proof beyond a reasonable doubt" (quotation and citation omitted).  Id.  "When applying this standard we are guided by the factual and practical considerations of everyday life on which reasonably prudent [people], not legal technicians, act" (quotation and citation omitted).  Id.  Probable cause is less than a preponderance; it is a "reasonable likelihood" that a crime was committed (citation omitted).  Commonwealth v. Murphy,

_____

Ct. 187, 190 (2016), and thus do not credit the defendant's denials and explanations that conflict with other evidence.

95 Mass. App. Ct. 504, 509 (2019).  See Commonwealth v. Preston P., 483 Mass. 759, 774 (2020) ("proof by a preponderance of the evidence" is "a higher standard than probable cause").  Finally, "[p]robable cause must be determined from the totality of the circumstances."  Commonwealth v. Brennan, 481 Mass. 146, 154 (2018).

b.  Motion to dismiss.  Where a clerk-magistrate has issued a criminal complaint, "a motion to dismiss[ ] is the appropriate and only way to challenge a finding of probable cause."  Commonwealth v. DiBennadetto, 436 Mass. 310, 313 (2002).  Except where the record establishes that the clerk-magistrate received additional evidence, a motion to dismiss for lack of probable cause is decided from the four corners of the criminal complaint application, which in this case consists of the application and attached police reports detailing the facts underlying the defendant's conduct.  See Commonwealth v. Costa, 97 Mass. App. Ct. 447, 449 (2020).  "The complaint application must include information to support probable cause as to each essential element of the offense."  Commonwealth v. Humberto H., 466 Mass. 562, 565-566 (2013).  Our review of a judge's probable cause determination is a question of law, which we review de novo.  Id. at 566.  We view the information set forth in the complaint application "in the light most favorable to the Commonwealth."  Commonwealth v. Leonard, 90 Mass. App. Ct. 187, 190 (2016).

c. <u>Open and gross lewdness</u>. General Laws c. 272, § 16, provides in relevant part:

> "A man or woman, married or unmarried, who is guilty of open and gross lewdness and lascivious behavior, shall be punished by imprisonment in the state prison for not more than three years or in jail for not more than two years or by a fine of not more than three hundred dollars."

This statute "has remained essentially unchanged for more than 200 years." <u>Commonwealth</u> v. <u>Maguire</u>, 476 Mass. 156, 158 (2017). However, the elements of the crime have evolved through Massachusetts judicial construction.[4] <u>Id</u>. To convict a person of open and gross lewdness, the Commonwealth must prove:

> "(1) the defendant exposed his or her, genitals, buttocks, or female breasts to one or more persons; (2) the defendant did so intentionally; (3) the defendant did so 'openly,' that is, either he or she intended public exposure, or he or she recklessly disregarded a substantial risk of public exposure, to others who might be offended by such conduct; (4) the defendant's act was done in such a way as to produce alarm or shock; and (5) one or more persons were in fact alarmed or shocked by the defendant's exposing himself or herself."

<u>Commonwealth</u> v. <u>Quinn</u>, 439 Mass. 492, 501 (2003).[5]

---

[4] In <u>Maguire</u>, for example, the Supreme Judicial Court held that the § 16 requirement of "alarm or shock" includes both an objective and a subjective component, and added that going forward, "it will be incumbent on the Commonwealth to demonstrate not only subjective 'shock' or 'alarm' on the part of a victim, but also that the victim's reaction was objectively reasonable." <u>Maguire</u>, 476 Mass. at 159.

[5] In analyzing the requirements under G. L. c. 272, § 16, Massachusetts courts have often looked for guidance to the "closely similar" yet distinct offense of "indecent exposure," G. L. c. 272, § 53. See <u>Quinn</u>, 439 Mass. at 494-496 (comparing and contrasting elements of both statutes); <u>Commonwealth</u> v.

2.  Analysis.  The present case hinges on the third element
of G. L. c. 272, § 16, i.e., whether there is probable cause to
show that the defendant exposed himself "openly" within the
meaning of the statute.[6]  See Quinn, 439 Mass. at 501.  The
Commonwealth argues that the criminal complaint application
established probable cause because "the defendant, after being
advised of the presence of security cameras in the interior of
the home he had been hired to paint, masturbated while looking
into those cameras as he moved from room to room."  Thus, the
Commonwealth contends, the conduct satisfied the openness
element at the probable cause stage.

Viewed in the light most favorable to the Commonwealth, the
information in the criminal complaint application and police

_____

Fitta, 391 Mass. 394, 396-397 & n.3 (1984) (comparing elements
and noting different penalties); Commonwealth v. Waterman, 98
Mass. App. Ct. 651, 654-657 (2020) (comparing elements of both
statutes and explaining theories under which indecent exposure
is and is not lesser included offense of open and gross
lewdness).  See also Maguire, 476 Mass. at 158 (proof of fourth
and fifth elements requiring "shock" or "alarm" distinguishes
felony of open and gross lewdness from "closely similar"
misdemeanor of indecent exposure).  But see Commonwealth v.
Templeman, 376 Mass. 533, 538 (1978) ("The history of § 16 is
quite separate from that of § 53").  Accordingly, it is not
surprising that both parties cite to and rely on such cases
throughout their briefs.  Where appropriate, we likewise look to
such authority, keeping in mind the distinct histories and
differing elements and applications of the two statutes.

[6] There is no dispute that the criminal complaint
application and attached police reports contain sufficient
information to show probable cause as to all other elements of
open and gross lewdness.

reports may indeed have been adequate to show that the defendant intended public exposure or recklessly disregarded a substantial risk of public exposure. See Quinn, 439 Mass. at 501. However, that does not end our analysis. To be "open" under G. L. c. 272, § 16, the conduct "must occur in the presence of another person who can be alarmed or shocked." Quinn, supra at 496 n.9. The "presence" requirement is well established in our case law. See Commonwealth v. Wardell, 128 Mass. 52, 53-54 (1880) (explaining under prior version of G. L. c. 272, § 16, that defendant's lewd conduct was "open" where act was intended to be seen by "persons present" and "was observed by at least one of those present").

The Commonwealth does not dispute that proof of the crime of open and gross lewdness requires the presence of another person. Nevertheless, the Commonwealth theorizes that "virtual presence" suffices to satisfy the requirement that the crime be committed "openly." Quinn, 439 Mass. at 501. Our cases have acknowledged that the interpretation of laws can evolve in response to continuous technological advancement. See, e.g., Commonwealth v. Carter, 474 Mass. 624, 635-636 (2016), S.C., 481 Mass. 352 (2019), cert. denied, 140 S. Ct. 910 (2020) (recognizing defendant's "virtual presence at the time of the [victim's death]" as one of various circumstances that supported probable cause to sustain indictment for involuntary

manslaughter); Perry v. Commonwealth, 438 Mass. 282, 285 (2002), quoting Towne v. Eisner, 245 U.S. 418, 425 (1918) ("A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used" [quotation and citation omitted]).  See also note 7, infra. That idea is perhaps even more apt in a context like the present where, as explained above, the elements and meaning of the crime of open and gross lewdness "have evolved through our decisional law."  Maguire, 476 Mass. at 158.  While we do not opine whether a "virtual presence" theory might prevail on different facts and circumstances, the Commonwealth's argument falls short in the present case for several reasons.

First, as the Commonwealth concedes, all reported decisions in Massachusetts addressing violations of G. L. c. 272, § 16, "appear to exclusively involve unwitting individuals being physically present when they experience shock or alarm from a defendant's exposure."  Second, not only was the victim not physically present to observe the defendant's conduct; she observed the acts on recorded video footage sometime after the conduct had occurred.  See note 2, supra.  Accepting the Commonwealth's expansive theory of "virtual presence" under the present facts could create criminal liability whereby any recorded lewd act could rise to the level of a violation of the

statute. We decline to adopt such a broad reading of G. L. c. 272, § 16. See Commonwealth v. Kelley, 25 Mass. App. Ct. 180, 183 (1987) (noting that definition of "public" conduct requirement of G. L. c. 272, § 53, is "strict"). Finally, the only case cited by the Commonwealth in support of its virtual presence theory, see Carter, 474 Mass. at 635, is distinguishable. There, the evidence was found adequate to support probable cause that the defendant caused the victim's suicide through remote communications. Id. at 635-636 & n.16. Unlike the present case, openness was not a requirement of the crime in Carter. In addition, the defendant and the victim were aware of each other, and interacted contemporaneously via cell phone and text messaging. Id. at 628-630. Moreover, given the amount of real time, consensual sexual conduct lawfully engaged in online, treating video interaction as "virtual presence" sufficient to demonstrate openness might criminalize a broad range of activity beyond the scope contemplated by G. L. c. 272, § 16.[7]

---

[7] We do not categorically dismiss the possibility that some form of virtual presence may satisfy the open requirement under G. L. c. 272, § 16. See Commonwealth v. Carrasquillo, 489 Mass. 107, 108 (2022) (addressing analytical challenges in criminal law context "[g]iven the rapidly evolving role of social media in society, and the relative novelty of the technology at issue"). On the other hand, it may be that legislative action is needed to address such issues. See Brennan, 481 Mass. at 155 (holding that probable cause existed to prove criminal harassment where defendant concealed global positioning system

3. Conclusion. Where the criminal complaint application contained no information from which one could reasonably infer that the victim was present within the meaning of G. L. c. 272, § 16, the conduct was not "open" as a matter of law. Therefore, the order dismissing the criminal complaint must be affirmed.[8]

So ordered.

---

devices on victims' vehicles and tracked movements of devices using his cell phone, but recognizing that "[t]he law has not fully caught up to the new technology, and given the speed with which technology evolves, it may sometimes leave victims without recourse").

[8] Our decision should not be read to condone the defendant's conduct. We hold only that the under the present set of facts the Commonwealth failed to demonstrate that the conduct was open within the meaning of the statute.