NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-690                                            Appeals Court

COMMONWEALTH  vs.  MARYANN RUSSO.

No. 22-P-690.

Norfolk.     March 8, 2023. – September 14, 2023.

Present:  Massing, Hershfang, & D'Angelo, JJ.


Animal.  Dog.  Practice, Criminal, Dismissal.  Probable Cause.
    Statute, Construction.


    Complaint received and sworn to in the Quincy Division of
the District Court Department on February 10, 2021.

    A motion to dismiss was heard by John P. Stapleton, J.


    Tracey A. Cusick, Assistant District Attorney, for the
Commonwealth.
    Jason S. Bolio for the defendant.


    HERSHFANG, J.  This case asks us to determine whether a pet

owner who declined to follow a veterinarian's recommendation

that she euthanize her suffering, terminally ill dog may be

charged with animal cruelty under G. L. c. 272, § 77.  Because

we conclude that the statute does not reach the defendant's

conduct, we affirm the District Court judge's order dismissing the criminal complaint.

Background.  "Our review of the judge's order of dismissal is confined to the four corners of the application for complaint," Commonwealth v. Brennan, 481 Mass. 146, 147 (2018), quoting Commonwealth v. Ilya I., 470 Mass. 625, 626 (2015), which here consists of the application and five "supplemental narratives" by investigators.  We summarize the information in a light most favorable to the Commonwealth.  See Brennan, supra at 149.  On Christmas Day 2020, the defendant's family arrived at an animal hospital with a fourteen year old dog with a large mass on his side.  The staff recommended that the dog have surgery to remove the mass.  Rather than authorize the surgery, the defendant's family took the dog home.  About three weeks later, on the evening of January 13, 2021, the defendant and her mother brought the dog back to the animal hospital.[1]  By this point, the dog was anemic, unable to stand or walk, and suffering from bed sores, and he had a necrotic mass on his side as well as an open necrotic wound.  The dog's breathing was

_____

[1] The narratives about the visits to the animal hospital on December 25, and January 13 through January 14, speak of "the owners" and "the Russos," without differentiating which acts were performed by the defendant and which by other members of her family.  The complaint application establishes that the defendant owned the dog, and she does not contest either her ownership or her identity.  We therefore assume that she was properly named as the defendant.

labored.  The veterinarian recommended humane euthanasia, opining that there was no way to control the dog's "super painful" condition.  After leaving the dog at the animal hospital overnight, the family requested the previously recommended surgery to remove the mass.  The veterinarian declined, saying that the dog probably would not survive.  The defendant's family took the dog home, representing that a different veterinarian would euthanize him.

Suspecting that the family would not have the dog euthanized, the veterinarian reported the defendant to the Animal Rescue League of Boston (ARL).[2]  The next day, the defendant contacted the ARL's law enforcement hotline and reported that the dog was in good health, eating, drinking, and beginning to act normal again.  The defendant explained that she would not euthanize the dog because his health had improved and provided a telephone number for return calls.  Beginning that day, and over the following weeks, the assigned ARL investigator

---

[2] Veterinarians are obligated to report suspicions of animal cruelty to "a police officer or special state police officer appointed under section 57 of chapter 22C."  G. L. c. 112, § 58B.  General Laws c. 22C, § 57, authorizes the colonel of the State police to appoint duly accredited agents of the ARL (among others) as "special state police officers" with "the powers of constables and police officers to arrest and detain any person violating any law for the prevention of cruelty to animals."  We assume for purposes of this appeal that the ARL inspector was duly appointed.

repeatedly tried to reach the defendant by telephone and at home, leaving notices and messages, with no success.

On February 4, the ARL investigator returned to the defendant's home and was admitted by her mother.[3]  The investigator found the dog in the living room, lying on the couch on a piece of linen and wearing a diaper.  The dog was still and stiff, taking periodic shallow breaths.  He had raw sores on his legs and appeared thin, with a distended belly.  When the investigator asked to see the mass, the defendant's mother turned the dog on his other side, causing the dog to gasp for air and exposing a large mass.  In response to the investigator's comment that the dog was suffering and needed immediate medical attention, the defendant's mother displayed a bag of pills, saying that they were the dog's pain pills but that he no longer needed them.  The family again declined to euthanize the dog or get him medical attention; the defendant's mother said that the dog would "die at home."[4]

---

[3] Three family members were in the home, none of whom was the defendant.  The defendant's mother identified the defendant as the dog's owner.

[4] Though not included in the "four corners" of the complaint and not relevant to our analysis, the record shows that the investigator obtained a warrant, seized the dog, and had him euthanized.

The defendant was charged with violating the animal cruelty statute, G. L. c. 272, § 77, and she moved to dismiss the complaint.  The motion was allowed, and this appeal followed.

Discussion.  1.  Standard of review.  "In reviewing a motion to dismiss a complaint, the judge must decide whether the complaint application contains 'sufficient evidence to establish the identity of the accused and . . . probable cause to arrest [her].'"  Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013), quoting Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982).  "This standard is 'considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding.'"  Brennan, 481 Mass. at 149, quoting Commonwealth v. O'Dell, 392 Mass. 445, 451 (1984).  "To establish probable cause, the complaint application must set forth 'reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense.'"  Humberto H., supra at 565, quoting Commonwealth v. Roman, 414 Mass. 642, 643 (1993).  "Whether the complaint application establishes probable cause is a question of law; thus, 'we review the motion judge's . . . determination de novo.'"  Brennan, supra, quoting Humberto H., supra at 566.  "We are in as good a position as a motion judge to assess the evidence submitted in support of the application for a criminal complaint, and we consider the evidence in the light most

favorable to the Commonwealth without deference to the motion judge's factual findings or legal conclusions." Brennan, supra.

2. Animal cruelty statute. "In every question of statutory interpretation, we begin our analysis with the plain language of the statute." Commonwealth v. Escobar, 490 Mass. 488, 493 (2022). It is a fundamental principle of statutory interpretation that

> "a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated."

Commonwealth v. Clinton, 491 Mass. 756, 766 (2023), quoting Oracle USA, Inc. v Commissioner of Revenue, 487 Mass. 518, 522 (2021).

> "[E]ach clause or phrase is to be construed with reference to every other clause or phrase without giving undue emphasis to any one group of words, so that, if reasonably possible, all parts shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose."

Commonwealth v. Paul, 96 Mass. App. Ct. 263, 268-269 (2019), quoting Selectmen of Topsfield v. State Racing Comm'n, 324 Mass. 309, 312-313 (1949). "[N]one of the words of a statute is to be regarded as superfluous" (citation omitted). Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth., 352 Mass. 617, 618 (1967).

Against that analytical backdrop, we focus on the words chosen by the Legislature.  Most of the statute is devoted to criminalizing specific acts of cruelty against animals.  It begins a long list of prohibited conduct with, "Whoever overdrives, overloads, drives when overloaded, overworks, tortures, torments, deprives of necessary sustenance, cruelly beats, mutilates or kills an animal," and further criminalizes the action of "us[ing] [an animal] in a cruel or inhuman manner in a race, game, or contest, or in training therefor," or "inflict[ing] unnecessary cruelty upon [an animal], or unnecessarily fail[ing] to provide it with proper food, drink, shelter, sanitary environment, or protection from the weather . . . ."  G. L. c. 272, § 77.

After these specific prohibitions comes the language at issue in this case, which imposes criminal penalties on anyone who, "having the charge or custody of an animal . . . knowingly and willfully authorizes or permits it to be subjected to unnecessary torture, suffering or cruelty . . . ."  G. L. c. 272, § 77.  This language is distinct from the preceding portion of the statute in at least two ways.  First, it requires a "knowing" and "willful" mental state to trigger liability. See Commonwealth v. Erickson, 74 Mass. App. Ct. 172, 176 (2009), cert. denied, 558 U.S. 1153 (2010) ("The heightened mental state of 'knowing' and 'willful' conduct was included by the

Legislature only in two portions of G. L. c. 272, § 77, . . . [including] where someone 'knowingly and willfully authorizes or permits [an animal] to be subjected to unnecessary torture, suffering, or cruelty . . .'").

Second, it criminalizes the conduct of one who has charge of an animal but, rather than inflicting the harm directly, as in the preceding proscriptions, "authorizes or permits" the animal "to be subjected to" harm. G. L. c. 272, § 77. The passive construction stands in stark contrast to the active voice of the other verbs in the statute. Unlike those verbs, "subjected to" identifies no actor. Yet there must be one. "I was subjected to a grueling cross-examination" makes sense, while "I was subjected to a herniated disc" does not. See The American Heritage Book of English Usage 46 (1996) ("In the passive voice . . . [t]he person or thing that is acted upon becomes the subject, and the performer of the action gets put in a prepositional phrase beginning with by or is omitted from the sentence altogether"). "Subjected to" was added in 1868 and has been included in all subsequent versions of the statute.[5]

---

[5] See St. 1868, c. 212, § 2; St. 1869, c. 344, § 2; P.S. (1882), c. 207, § 53; R.L. (1902), c. 212, § 70; G. L. c. 272, § 77. Tellingly, the 1869 revision struck a provision from the 1868 statute that criminalized the act of a custodian who authorized or permitted an animal "to suffer unnecessary torture or cruelty." In addition to striking the phrase "to suffer," the statute was revised to add "suffering" between "torture" and "cruelty." St. 1869, c. 344, § 2. This change supports our

Because we "presume, as we must, that the Legislature intended what the words of the statute say," Commonwealth v. Williamson, 462 Mass. 676, 679 (2012), quoting Commonwealth v. Young, 453 Mass. 707, 713 (2009), we accept that, by the language at issue here, the Legislature deliberately chose to criminalize only situations where someone (or something) "subjected" the animal to the harm at issue. See, e.g., Commonwealth v. Turner, 145 Mass. 296, 299 (1887) (evidence sufficient to go to jury where defendant custodian of fox let it loose to be hunted by dogs, who "caught [fox] and mangled it");[6] Commonwealth v. Thornton, 113 Mass. 457, 458 (1873) (indictment charged crime through allegation defendant "knowingly and wilfully suffer[ed] and permit[ted] [a] dog to be bitten, mangled and cruelly tortured by a certain other dog"). We have not found, nor have the parties cited, a case in which a person's failure to intervene with the complicated, heartbreaking, painful end of an animal's life has been interpreted as "subjecting" an animal to statutorily prohibited

_____

interpretation that the Legislature intended criminal liability to lie only when the animal was "subjected to" the harm, rather than simply "suffering" the harm.

[6] The statute then in effect, P.S. (1882), c. 207, § 53, criminalized, in pertinent part, the actions of an "owner, possessor, or person having the charge or custody of an animal, who . . . knowingly and wilfully authorizes or permits it to be subjected to unnecessary torture, suffering, or cruelty of any kind . . . ."

harm.[7]  We decline to extend the statute in this way.  In so
deciding, we rule only on the facts of the case before us and
express no opinion whether, in a different situation, depriving
an animal of medical care might violate the statute.[8]

Conclusion.  For the foregoing reasons, we affirm the order
allowing the defendant's motion to dismiss the criminal
complaint.[9]

So ordered.

---

[7] The Commonwealth resists the notion that it charged the
defendant because she failed to euthanize the dog, noting
instead that the complaint alleged broader criminal conduct,
that of permitting unnecessary torture or suffering by not
treating the dog's pain and labored breathing.  Although this
position rings discordantly against the facts as argued at the
hearing by the Commonwealth -- the veterinarian "recommended
humane euthanasia . . . because this [fourteen year old] dog's
pain could not be controlled" -- we need not address this
argument given our conclusion that the complaint did not allege
a crime contemplated by the statute.

[8] Between 1982 and 2010, the Legislature considered and
rejected at least three bills that would have criminalized the
defendant's conduct.  See House Doc. No. 1303 (Jan. 13, 2009);
House Doc. No. 1339 (Jan. 10, 2007); House Doc. No. 865 (Jan. 6,
1982).  We recognize that "[w]e do not draw conclusions
concerning the intent of the Legislature based on the failure to
enact a subsequent amendment," Cook v. Patient Edu, LLC, 465
Mass. 548, 555 n.14 (2013), and note these proposed amendments
solely as background.

[9] The defendant seeks leave "to file the appropriate
affidavits and other information" supporting her request for
appellate attorney's fees and costs.  In compliance with Mass.
R. Crim. P. 15 (d), as amended, 476 Mass. 1501 (2017), the
defendant may do so within thirty days of the issuance of the
rescript.  See Commonwealth v. Ennis, 441 Mass. 718, 720 (2004);
Commonwealth v. Santos, 99 Mass. App. Ct. 360, 365 (2021).